634 F.2d 1261
 UNITED STATES of America and United States of America ex
rel. Secretary, Department of Housing and Urban
Development, Plaintiffs-Appellees,
v.
Hon. Milbern J. ADAMS, Judge of the District Court, Caddo
County, State of Oklahoma, Defendant,
James T. Hunter, Receiver for CDI Homes, Inc., Real Party in
Interest, Defendant-Appellant.
 No. 79-1232.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 18, 1980.
Decided Nov. 10, 1980.
 
 Nancy B. Firestone, Atty., Dept. of Justice (James W. Moorman, Asst. Atty. Gen., Carl Strass and Steven E. Carroll, Attys., Dept. of Justice, Washington, D. C., Larry D. Patton, U. S. Atty., Susie Prichett and Richard F. Campbell, III, Asst. U. S. Attys., Oklahoma City, Okl., with her on brief), for plaintiffs-appellees.
 Lee M. Holmes of Ellison & Holmes, Oklahoma City, Okl., for defendant-appellant, James T. Hunter.
 Before McWILLIAMS and BARRETT, Circuit Judges, and TEMPLAR, District Judge*.
 BARRETT, Circuit Judge.
 
 
 1
 James T. Hunter, Appellant, receiver for CDI Homes Inc. (CDI), as the real party in interest, and on behalf of Hon. Milbern J. Adams, Judge of the District Court, Caddo County, State of Oklahoma (Judge Adams), seeks review of a preliminary and permanent injunction restraining the District Court of Caddo County, Oklahoma from further proceedings in CDI's action brought against the United States and United States, ex rel. Secretary, Department of Housing and Urban Development (HUD). Within its state complaint, CDI alleged that: it had a contractual agreement with Kiowa Housing Authority, an agent of HUD; it had third party beneficiary rights pursuant to contractual provisions between Kiowa Housing Authority and HUD under an annual contribution contract; and, as a result of the breach of the agreements, it has been damaged by Kiowa Housing Authority and HUD in the amount of $2,450,000.00. A review of the complex litigative history in both the state and federal courts is necessary to focus on the appellate posture of this case as presented for our review.
 
 
 2
 On February 18, 1975, Hunter, as receiver for CDI, filed suit against the Kiowa Housing Authority and the United States, in the United States District Court for the Western District of Oklahoma. By amended complaint, HUD was made an additional party defendant. CDI alleged that: on June 19, 1970, Great Plains Development, Inc. had entered into a contract with Kiowa Housing Authority and the United States for the construction of 450 homes to be built by Great Plains Development, Inc. and sold to Kiowa Housing Authority for $8,299,374.00; on July 19, 1971 Great Plains assigned all its interest in the project to CDI; subsequent to the assignment, CDI took the necessary and proper preparations to establish a modular home plant and in conjunction therewith hired employees and acquired equipment; CDI established the modular home plant based on assurances from Kiowa Housing Authority and HUD that home sites would be available on a regular and timely basis; due to the delays of Kiowa Housing Authority and HUD in selecting, approving and making available home sites, CDI incurred additional expenses and substantial losses that would not have normally occurred on the project; and, as a result of the failure of Kiowa Housing Authority and HUD to make available home sites in a proper and timely manner in accordance with the project contract, CDI had suffered damages and incurred additional expenses of $2,312,500.00. CDI alleged jurisdiction founded on 28 U.S.C.A. § 1331, and that consent to suit, for other than the Kiowa Housing Authority, arose under 12 U.S.C.A. § 1702[1] of the National Housing Act and 42 U.S.C.A. § 1404a[2] of the United States Housing Act.
 
 
 3
 On November 25, 1975, Kiowa Housing Authority and the United States moved to dismiss, on the grounds that the Court lacked jurisdiction over the subject matter, the complaint failed to state a claim upon which relief could be granted, and for lack of a federal question. A brief filed in support of the motion to dismiss further addressed, in detail, the contention that jurisdiction over the contract matters involved rested exclusively with the United States Court of Claims.
 
 
 4
 After extensive briefing by the parties, the Court, on September 30, 1976, in a memorandum opinion and order, found and ruled that the action came under the waiver of sovereign immunity proviso contained in 12 U.S.C.A. § 1702 (supra, footnote 1) and that if CDI could establish that the action arose under the Constitution or laws of the United States, the Court would entertain subject matter jurisdiction under 28 U.S.C.A. § 1331. Following additional briefing, the Court, on April 27, 1977 dismissed the action for lack of subject matter jurisdiction.
 
 
 5
 Prior to the Court's order of dismissal, CDI had, on February 10, 1977, filed an identical lawsuit in the District Court of Caddo County, State of Oklahoma. That case was regularly assigned to Hon. Milbern J. Adams, Judge, a defendant in the instant case. On February 25, 1977, Kiowa Housing Authority and HUD filed a petition for removal to the Federal District Court, alleging that original jurisdiction rested in the federal courts. In addition, the United States filed a motion to dismiss in Federal District Court. Thereafter, on October 18, 1977, the Federal District Court remanded the case to the State District Court of Caddo County.
 
 
 6
 After remand to the state court, HUD entered a special appearance and demurred to the complaint based on the defense of sovereign immunity and on jurisdictional grounds. HUD also argued that a cause of action for alleged breach of contract against the United States may only be pursued in the United States Court of Claims.
 
 
 7
 Following review of the briefs submitted by the parties, Judge Adams overruled the Government's demurrer. Subsequently, HUD filed for a writ of prohibition and mandamus in the Oklahoma Supreme Court, seeking to prohibit Judge Adams from hearing the case. The Oklahoma Supreme Court refused to accept jurisdiction. Thereafter, Judge Adams ordered the United States to answer CDI's complaint by July 20, 1978. This date was later extended to August 20, 1978.
 
 
 8
 On August 18, 1978, without notice to CDI, HUD filed the instant action in Federal District Court seeking injunctive and declaratory relief. Thereafter, on December 8, 1978, the Federal District Court entered a permanent injunction enjoining CDI and Judge Adams from further proceedings against the United States in state court. The Court found that the United States had not consented to be sued in state courts, that its earlier decision refusing to grant the United States' motion for removal was in error since the suit should have been dismissed at that time, and that the action could only be properly maintained in the Court of Claims.
 
 
 9
 On December 21, 1978, CDI filed a motion to alter judgment, seeking, inter alia, to exclude the non-federal defendant (Kiowa Housing Authority) from the injunction's scope, an alteration or amendment so as to order only a temporary injunction, and additional briefing and presentation of evidence relative to the permanent injunction. CDI also requested that the Court, in the event it was not inclined to hear additional evidence, transfer its state court action to the Court of Claims. On December 27, 1978, the Court granted CDI's motion to exclude the non-federal defendant from the injunction's scope; denied the requested motion for additional briefing and presentation of evidence; and refused to transfer the state court action to the Court of Claims, observing, "While the Court stated ... that the Court of Claims was the exclusive forum for this lawsuit, this Court is without jurisdiction to transfer a state action to the Court of Claims." (R., Vol. I, p. 70).
 
 
 10
 On appeal CDI contends: (1) The Court erred in enjoining state court proceedings against appellees, United States of America and HUD; (2) sovereign immunity has been waived by applicable statutes; and (3) state courts have concurrent jurisdiction with federal courts to hear this case.
 
 
 11
 At the outset it is important to clarify the appellate posture of this case. This is not an action against appellees, the United States of America and HUD for specific monies due and owing appropriated for a particular project. CDI has not, at any time during the course of the state and federal district court proceedings, and does not now, allege that appellees have failed or refused to pay it for its work completed on the project, or that the monies it presently seeks are part of the funds originally allocated for the project as approved. Rather, CDI's action was at the beginning, and has remained throughout, one for compensatory damages, based on the alleged breach of appellees' contractual duties and obligations in failing to certify, approve, and make available home sites on a timely basis. As such, recovery of any damages by CDI would, of necessity, be fulfilled only by the withdrawal of funds from the Treasury of the United States of America.
 
 I.
 
 12
 CDI contends that the Federal District Court erred in enjoining its state court proceedings against appellees and that state courts have concurrent jurisdiction with federal courts to hear this case. Inherent within this contention is the underlying assertion that the Court's determination that jurisdiction rests exclusively with the Court of Claims is in error.
 
 
 13
 CDI argues that Congress specifically waived the defense of sovereign immunity as to suits against HUD pursuant to 42 U.S.C.A. § 1401 et seq., and/or 12 U.S.C.A. § 1701 et seq. CDI argues that "the actions complained of in the lawsuit against HUD are actions authorized by Title 42 U.S.C.A. § 1401 et seq., and that waiver of immunity contained in § 1404a is applicable to HUD." (Br. for App. at p. 27). The parties agree that the project herein was entered into pursuant to 42 U.S.C.A. § 1401 et seq. However, as noted in Footnote 2, supra, the waiver provision of § 1404a provides that the "United States Housing Authority may sue and be sued only with respect to its functions under this chapter..."
 
 
 14
 Assuming, arguendo, that CDI is correct in asserting that the waiver of immunity contained in § 1404a is applicable to HUD, that waiver is "only with respect to its functions under this chapter". CDI, however, has failed to present cogent authority, and our research has failed to disclose any, which holds that payment of damages for alleged contractual breaches arising out of an approved contract falls within the "functions" of HUD in making housing available. Had HUD failed to pay CDI a portion of the monies allocated for the project, we agree that HUD would be subject to suit in relation to those funds committed to the project under § 1404a. However, as noted, supra, such is not the case. In addressing this limitation, the Supreme Court, in F.H.A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940) opined:
 
 
 15
 And so far as the federal statute (Act of August 23,
 
 
 16
 1935, c. 614; 49 Stat. 684, 722, predecessor of 12 U.S.C.A. § 1702 under consideration herein) is concerned, execution is not barred, for it would seem to be part of the civil process embraced within the "sue and be sued" clause. That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment. Claims against a corporation are normally collectible only from corporate assets. That is true here. Congress has specifically directed that all such claims against the Federal Housing Administration of the type here involved "shall be paid out of funds made available by this Act." § 1. Hence those funds, and only those, are subject to execution. The result is that only those funds which have been paid over to the Federal Housing Administration in accordance with § 1 and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution. (Emphasis supplied). 309 U.S. at p. 250, 60 S.Ct. at p. 493.
 
 II.
 
 17
 CDI's further assertion that the waiver of immunity and right to sue HUD in "any court of competent jurisdiction, State or Federal" under § 1702, Footnote 1, supra, creates jurisdiction for the relief sought is also without merit. This is true first because the waiver contained in § 1702 does no more than waive the sovereign immunity that would otherwise preclude suit against the Secretary in his or her official capacity and, even then, is specifically limited to actions involving housing renovation, mortgage insurance, national mortgage associations, war housing insurance for investments in rental housing, armed services housing mortgage insurance, national defense housing insurance, mortgage insurance for land development, and mortgage insurance for group practice facilities. Second, nothing in § 1702 under which the Secretary of HUD may "sue and be sued in any court of competent jurisdiction, State or Federal", would, ipso facto, afford CDI the right to sue appellees in the State courts of Oklahoma inasmuch as CDI's action is one for damages predicated on an alleged breach of contractual duties. In addition to these limitations, the provision setting forth the right to sue or be sued is limited to the actions of the Secretary of HUD "in carrying out the provisions of this subchapter and subchapters ...", and, as such, it does not encompass a contract damage suit.
 
 
 18
 We observe that the courts are not in agreement whether § 1702 provides subject matter jurisdiction. See Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370, 376 (D.C.Cir.1976). We need not pursue that matter, inasmuch as CDI alleges that subject matter jurisdiction is vested pursuant to 28 U.S.C. § 1331 which grants original jurisdiction in the district courts in all civil actions wherein the amount in controversy exceeds $10,000.00, exclusive of interest and costs, and arises under the Constitution, laws or Treaties of the United States.
 
 III.
 
 19
 Having held that CDI's action, assuming, arguendo, its viability, does not fall within 12 U.S.C.A. § 1701 et seq. and 42 U.S.C.A. § 1401 et seq., inasmuch as it is a damage action predicated on an alleged contractual breach seeking monetary recovery beyond those monies appropriated or committed for a specific project, we now must determine whether the Court properly determined that jurisdiction is exclusively vested in the Court of Claims.
 
 
 20
 Sovereign immunity waivers are, in each instance to be strictly construed. Hurley v. United States, 624 F.2d 93 (10th Cir. 1980). Furthermore, with respect to contract actions against the United States, in which Congress has consented to suit under the Tucker Act, federal district courts and the Court of Claims have concurrent jurisdiction for claims under $10,000.00; however, only the Court of Claims has exclusive jurisdiction of claims over $10,000.00. Walker Field, Colorado, Public Airport Authority v. Adams, 606 F.2d 290 (10th Cir. 1979); International Engineering Company, Division of A-T-O, Inc. v. Richardson, 512 F.2d 573 (D.C.Cir.1975), cert. denied, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1975); Akin Mobile Homes, Inc. v. Secretary of Housing and Urban Development, 475 F.2d 1261 (5th Cir. 1973).
 
 In Walker Field, supra, we observed:
 
 21
 These allegations could serve as a basis for attempting proof of actual damages for breach of contract by Walker Field. Such a case would come within 28 U.S.C. Sec. 1491 as a "claim against the United States founded ... upon any express or implied contract with the United States ..." and hence within jurisdiction of the Court of Claims. And such jurisdiction would be exclusive because as such a claim the complaint would also run afoul of the limitation on the concurrent jurisdiction of the district court in contract claims against the United States. 28 U.S.C. Sec. 1346(a)(2) provides that the district courts have jurisdiction inter alia, of any "civil action or claim against the United States, not exceeding $10,000 in amount founded ... upon any express or implied contract with the United States ..." (Emphasis added).
 
 
 22
 Thus as such a contract claim against the United States for damages over $10,000, we must agree with the trial judge that the Court of Claims has exclusive jurisdiction. See International Engineering Co., Division of A-T-O, Inc. v. Richardson, 512 F.2d 573, 577 (D.C.Cir.), cert. denied, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636. 606 F.2d at p. 294.
 
 
 23
 In a case factually quite similar to the instant case, the Court, in A. L. Rowan & Son, General Contractors, Inc. v. Department of Housing and Urban Development, 611 F.2d 997 (5th Cir. 1980), ruled that exclusive jurisdiction vests in the Court of Claims. In Rowan, supra, a contractor, who had entered into an agreement with HUD to build low cost housing, filed an action to recover project cost overruns of $113,173.00, generated when the City of Monroe, Louisiana, assessed a total cost for the off-site improvements that exceeded the bid and monies appropriated for the project by $113,173. In Rowan, supra, the Court stated:
 
 
 24
 A general contractor, A. L. Rowan & Son, whose controlling stockholders are members of a minority group and who, therefore, was solicited for a bid pursuant to policies of the Department of Housing and Urban Development, agreed with the Monroe, Louisiana Housing Authority to build and sell to the Housing Authority a low income housing project for $2,100,139. The price of the project was based on cost estimates, including one from the City of Monroe for off-site improvements necessary to complete the project. The Housing Authority, in turn, entered into an annual contribution contract with HUD, pursuant to 42 U.S.C. § 1437, which, as amended, committed HUD to provide the Housing Authority with financial assistance not to exceed.$2,273,921 to allow it to purchase and develop the project. Rowan's bid was accepted.
 
 
 25
 After the project had been completed, the city assessed a total cost for the off-site improvements that exceeded by $113,173 the sum used to calculate the bid. Both HUD and the Housing Authority refused to increase the amount paid Rowan. Consequently the general contractor sought to recover the excess in district court either as a third-party beneficiary under the annual contribution contract or for unjust enrichment of HUD on the theory that the project was worth $113,173 more than the sum paid for it. The plaintiff alleged jurisdiction under 28 U.S.C. § 1331 (federal question), § 1346 (civil actions against the United States) and § 1361 (action in the nature of mandamus to compel an officer of the United States to perform a duty owed to the plaintiff).
 
 
 26
 When an action against the United States or its agencies is "founded ... upon any express or implied contract with the United States" or "for liquidated or unliquidated damages in cases not sounding in tort," 28 U.S.C. § 1346(a)(2), that section is normally relied upon, for it operates both as a waiver of sovereign immunity and a grant of jurisdiction. See Trans-Bay Engineers & Builders, Inc. v. Hills, D.C. Cir. 1976, 179 U.S.App.D.C. 184, 190, 551 F.2d 370, 376. However, if such claims exceed $10,000, exclusive jurisdiction to determine them is vested in the Court of Claims. Blanchard v. St. Paul Fire & Marine Ins. Co., 5 Cir. 1965, 341 F.2d 351, 358, cert. denied, 382 U.S. 829, 86 S.Ct. 66, 15 L.Ed.2d 73, 611 F.2d at p. 999.
 
 
 27
 We hold that the Court did not err in finding that exclusive jurisdiction vests with the Court of Claims. Thus, the Court properly enjoined further action in the state courts of Oklahoma.
 
 
 28
 AFFIRMED.
 
 
 
 *
 Of the United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 12 U.S.C.A. § 1702 provides in part:
 The Secretary shall, in carrying out the provisions of this subchapter and subchapters ... be authorized in his official capacity to sue and be sued in any court of competent jurisdiction, State or Federal.
 
 
 [2]
 42 U.S.C.A. § 1404a provides in part:
 The United States Housing Authority may sue and be sued only with respect to its functions under this chapter, and sections 1501 to 1505 of this title.